GUARANTEE, SAVINGS, LOAN AND INVESTMENT COMPANY V. J. W. MITCHELL.

Decided November 10, 1906.

**Loan Contract—Subscription to Stock—Usury.**

In a suit to cancel a loan contract on the ground of usury it appeared from the evidence that the borrower was required to subscribe to a certain number of shares of stock in the loan company as a condition precedent to obtaining the loan; that the agent of the defendant told the plaintiff (the borrower) that subscribing for the stock was a mere matter of form, that he would not be a stockholder, that no payments would be credited on the stock but on the loan, and that the stock would cost nothing; that of the monthly payments a part was applied to the interest and a part to the principal of the loan or stock; that the stock payments were to be applied to the principal at any time plaintiff wanted to pay it off, and that a certificate of stock was issued to the borrower and immediately withdrawn. Held, that the issue of usury vel non was properly submitted to the jury, and that the evidence supported the finding that the purchase of stock was a device to evade the usury laws.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*Hill & Dabney,* for appellant.—It is the intention of the lender which affects a loan with usury, and if the lender does not intend to make a loan at a usurious rate, and does not, in fact, make a loan affected with usury, it is immaterial that the borrower understood and intended that the loan would be upon a usurious basis, or what his intentions were in the premises. Guarantee, Savings, Loan & Investment Co. v. J. W. Mitchell, 87 S. W. Rep., 184; Cotton States Bldg. Co. v. Rawlins, 62 S. W. Rep., 805; Peightal v. Cotton States Bldg. Co., 61 S. W. Rep., 428; Leary v. Peoples B. & L. Assn., 93 Texas, 1; International B. & L. Assn. v. Abbott, 85 Texas, 220; Interstate Building & Loan Assn. v. Goforth, 59 S. W. Rep., 871; Cotton States Building Co. v. Jones, 62 S. W. Rep., 741; El Paso B. & L. Assn. v. Lane, 81 Texas, 369; People's B. & L. Assn. v. Marston, 69 S. W. Rep., 1034; Geisberg v. Mutual B. & L. Assn., 60 S. W. Rep., 478.

*Culp & Giddings,* for appellee.—The evidence was ample to sustain the finding that the application for stock, stock subscription, etc., was but a scheme and device on the part of defendant and Mitchell to cover up a loan of $1,200 for 12 years and to enable defendant to collect $16 a month thereon for 12 years, which constitutes a usurious transaction. People B. & L. Assn. v. Keller, 50 S. W. Rep., 186; Peightal v. Cotton State B. & L. Assn., 61 S. W. Rep., 428; Walter v. Mutual Home Sav. Assn., 68 S. W. Rep., 537; Southern Home B. & L. Assn. v. Thompson, 58 S. W. Rep., 203; American Mut. B. & S. Assn. v. Daugherty, 66 S. W. Rep., 134.

CONNER, CHIEF JUSTICE.—This is the second appeal by appellant from an adverse judgment in the suit of Mrs. J. W. Mitchell to cancel, because of usury, a loan contract and trust deed made by her husband, J. W. Mitchell, in his lifetime. The case presents the usual features of

such suits and many of the facts are presented in the opinion on the former appeal (see 87 S. W. Rep., 184), which relieves us from here setting them out in detail. It may be briefly stated, however, that the appellee in her original petition alleged that about February 1, 1900, she and her deceased husband, J. W. Mitchell, contracted with the appellant for a loan of twelve hundred dollars for a term of twelve years, to be repaid in equal installments of sixteen dollars per month. That such loan was usurious and in order to cover up the usury it was agreed that Mitchell and wife should execute their note and other papers as set out in the petition, payable one hundred and forty-four months after date with interest at the rate of 10 percent per annum from date, and that they should sign an application for twelve shares of stock and to pay therefor six dollars on the first day of each month, ostensibly as payment of dues on stock, but in fact, the payments were to be applied in liquidation of the loan, plaintiffs not taking stock in good faith for investment, but only to obtain a loan and to evade the usury laws of Texas. That the application for stock and loan and the execution of the notes and other papers constituted one transaction and were made to assume the form in which they were executed for the purpose and as a device to evade the usury laws. The allegations were denied by appellant, which pleaded that the sale of stock was *bona fide* and the contract untainted. The trial resulted in a verdict in favor of appellee upon which judgment was entered decreeing that all sums paid by Mitchell, namely, five hundred and seventy-six dollars, be credited upon the principal of the loan which was declared usurious, and that appellant should have a foreclosure for the balance of its unpaid principal of six hundred and twenty-four dollars, upon the payment of which by Mrs. Mitchell into court, the deed of trust should be cancelled.

There are a number of assignments criticising the court's charge, and objecting to the court's refusal to give special instructions, that we deem without sufficient merit to warrant discussion, and which are therefore overruled without further notice. The principal assignments require of us, however, a determination of the sufficiency of the evidence to sustain the verdict and judgment. The loan was made through R. B. Howeth, appellant's local agent at the time in Gainesville, Texas. Mrs. Mitchell, the appellee, among other things testified that at the time of and before her husband made the application for the loan in question, Howeth represented to herself and husband that Mr. Mitchell would have to subscribe for stock in order to get the loan; that he "told us that subscribing for the stock was a mere matter of form; that we would not be stockholders; that no payment would be credited on the stock, but that all payments made would be credited on the loan and that the stock would cost nothing at all," Howeth testified that he "told him (Mitchell) he would have to pay sixteen dollars a month on the twelve hundred dollar loan. The loan was a 10 percent loan and the payments were sixteen dollars a month, ten dollars interest and six dollars on the principal of the loan or stock. He was to pay sixteen dollars, and the stock payments were to be applied on the payments of the principal at any time he wanted to pay it off, this statement being made on the authority of the State agent." It was otherwise shown

that at the time of the execution of the papers a certificate of stock was issued to Mitchell, upon which Mitchell made a payment of twelve dollars, and immediately signed his name to the following printed blank thereon: "The within mentioned shares of stock in the Guarantee Savings, Loan & Investment Company, are hereby withdrawn, and I have this day received the sum of ———— dollars in full of the amount due me by reason of such withdrawal." Whereupon he parted with his stock, having the certificate "just long enough to sign his name on it." That thereafter he made thirty-seven monthly payments thereon; that he never wrote a line to the company and it never wrote to him. Other testimony might be referred to, but, notwithstanding the testimony of a contrary import submitted by appellant, we think the evidence as a whole required the submission of the issue of usury to the jury and that it is sufficient to sustain their verdict.

In various forms it is insisted that Howeth had no authority to make loans and no authority to make the statements imputed to him, but we feel unable to so hold. Without undertaking to set forth all of the circumstances to be found in the voluminous record before us, we think it sufficient to say that the evidence has been carefully considered and we think the transaction in its undisputed features raises the inference that appellant's real purpose was to procure a borrower rather than a purchaser of stock, and it was for the jury to say, upon consideration of all of the evidence, whether the stock provision was a mere device to evade the usury laws of this State. If it was, and if payments in form applied upon the stock were in reality to be paid upon the loan, as must be implied from the verdict, it takes but a simple calculation to demonstrate the usurious character of the contract. In this view the real nature of the transaction, together with other evidence seems to raise the issue of Howeth's authority. This issue was very fully and fairly submitted to the jury, the court distinctly instructing them that no statement made by the local agent, Howeth, could be considered, unless the jury found that the appellant had authorized him to make the same.

It is insisted that the court should have instructed the jury as was requested by appellant, to the effect that the fact that it had been agreed that Mitchell's stock payments might be applied by him to his loan at the time of repayment thereof would not render the loan usurious. Admitting that such was the effect of the provision, no necessity existed for the court's so singling out this particular circumstance. It was but one of many relied upon by appellee, and we think the court very fully and very fairly submitted the whole case to the jury in his charge.

We conclude that there was no reversible error on the trial below, and that the judgment should in all things be affirmed.

*Affirmed.*

Writ of error refused.